UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
UNITED STATES OF AMERICA      :

                                   :

                                   :

      - against -            :

                                   :

WIGBERTO VIERA,          :
  a/k/a "Roberto,"        :
  a/k/a "Wiz,"           :
LOUIE SANTIAGO,          :
  a/k/a "Lionel,"        :
  a/k/a "L,"             :
  a/k/a "Leonel,"        :
ERNESTO COLON,           :
EDUARDO DEJESUS, and     :
EVA FIGUEROA,            :

                                   :

                   Defendants.    :
--------------------------------------------------------x

**OPINION AND ORDER**

14 Cr. 83 (ER)

Ramos, D.J.:

## I.  BACKGROUND

On February 6, 2014, a grand jury returned an indictment charging Wigberto Viera, a/k/a

"Roberto," a/k/a "Wiz," Louie Santiago, a/k/a "Lionel," a/k/a "L," a/k/a "Leonel," Ernesto

Colon, Eduardo Dejesus, and Eva Figueroa with conspiracy to distribute narcotics, and

conspiracy to commit Hobbs Act robbery.[1]  Viera, Colon, Dejesus, and Figueroa were also

charged with possession of a firearm during the charged conspiracies, and Santiago with

brandishing a firearm during the charged conspiracies.  The charges arose from a sting operation

---

[1] On May 20, 2014, Eduardo Dejesus pled guilty to the Hobbs Act conspiracy and firearms possession charges.  *See*
Minute Entry, dated May 20, 2014.  On February 11, 2015, Eva Figueroa pled guilty to a superseding information
for misprision of felony charge.  *See* Minute Entry, dated February 11, 2015.

conducted by the Drug Enforcement Administration ("DEA"), which culminated in the defendants' arrest on January 8, 2014.[2]

Defendants Viera and Colon (together "Defendants") move to compel discovery under Rule 16 of the Federal Rules of Criminal Procedure and the Constitution. Doc. 93. The moving Defendants contend the requested discovery is necessary to file a subsequent pretrial motion to dismiss the indictment on the basis of selective prosecution and enforcement in violation of their Equal Protection rights under the Fifth and Fourteenth Amendments of the United States Constitution. Docs. 94, 95. Santiago requests permission to join in the instant motion.[3] Doc. 99.

For the reasons discussed below, Defendants' motion is DENIED.

## II.  DISCUSSION

### A.   Discovery Pursuant to Rule 16

To the extent Defendants seeks to compel discovery under Rule 16, Defendants' motion is denied. The Supreme Court in *United States v. Armstrong*, 517 U.S. 456, 463 (1996), held "that Rule 16(a)(1)(C) authorizes defendants to examine Government documents material to the preparation of their defense against the Government's case in chief, but not to the preparation of selective-prosecution claims." As such, Defendants cannot compel discovery under Rule 16.

### B.   Discovery Pursuant to *U.S. v. Armstrong*

While prosecutors have "broad discretion to enforce the Nation's criminal laws," this discretion is "subject to constitutional constraints." *Id.* at 464. The equal protection clause of the Fifth Amendment prohibits the government from using "unjustifiable standard such as race,

---

[2] A full discussion of the facts is provided in this Court's Opinion and Order dated January 14, 2015. *See* Doc. 76.

[3] The Court grants Defendant Santiago permission to join Defendants Viera's and Colon's motion to compel discovery.

religion, or other arbitrary classification" as a basis for prosecution. *Id.* "A defendant may demonstrate that the administration of a criminal law is 'directed so exclusively against a particular class of persons with a mind so unequal and oppressive' that the system of prosecution amounts to 'a practical denial' of equal protection of the law." *Id.* at 464-65 (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 373 (1886)).   To prove a claim for selective prosecution, "[t]he claimant must demonstrate that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." *Id.* at 465.  "To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted." *Id.*

"The standard for obtaining discovery on a selective prosecution claim," while "not identical to the standard applied to the merits," is "correspondingly rigorous." *United States v. Thompson*, No. 13 Cr. 378 (AJN), 2013 WL 6246489, at *5 (S.D.N.Y. Dec. 3, 2013) (citing *Armstrong,* 517 U.S. at 468 ("the rigorous standard for the elements of a selective-prosecution claim thus require a correspondingly rigorous standard for discovery in aid of such a claim.")). For a defendant to be entitled to discovery on the issue of selective prosecution, a defendant must produce "some evidence tending to show the existence" of discriminatory effect and intent, including "that similarly situated defendants of other races could have been prosecuted, but were not[.]" *Armstrong*, 517 U.S. at 468-69; *see also United States v. Al Jibori*, 90 F.3d 22, 25 (2d Cir. 1996) ("Under the *Armstrong* standard a defendant must make at least a credible showing of different treatment of similarly situated persons to establish a colorable basis for a finding of discriminatory effect and consequently to become eligible for discovery.") (internal citations and quotations omitted); *Thompson*, 2013 WL 6246489, at *5.[4]

_____

[4] Defendants seek discovery to explore claims for both selective-enforcement and selective-prosecution challenges. While noting that these two challenges are distinct, Defendants acknowledge that "for discovery purposes, they are

Here, Defendants rely on two categories of information to meet *Armstrong*'s standard. *First*, Defendants identify statistical information regarding (1) the racial composition[5] of defendants charged in "phony-stash house" cases pending in the Southern District of New York;[6] (2) the general racial composition of Manhattan, the Bronx and the Southern District of New York based on the 2010 census data; (3) the United States Sentencing Commission's data on the racial composition of offenders convicted from 2006 through 2012 under the robbery guideline that Defendants allege covers the kind of charges at issue in "phony-stash house" cases; (4) the New York State Division of Criminal Justice Services' data on the number of violent-felony offenses in New York State from 2009 through 2013; (5) the number of felony robbery convictions in New York State in 2013; and (6) the New York State Department of Corrections' ("DOCS") data on the racial composition of the state prison population as of January 2014. Declaration of John Diaz ("Diaz Decl.") ¶¶ 14-17, 23-27; Defs.' Mem. at 5-8.  *Second*, Defendants rely on two draft transcripts from another "phony-stash house" case pending in the Southern District of New York, *United States v. Rodriguez*, 13 Cr. 87 (CM),[7] where the DEA's confidential informant ("CI-2") explicitly refers to the defendant's and the defendant's co-conspirators' race.  Diaz Decl. ¶¶18-22; Defs.' Mem. at 5.

---

analyzed under the same legal standard."  Defs.' Mem. at 4 n.4 (citing *United States v. Barlow*, 310 F.3d 1007, 1010 (7th Cir. 2002) ("a defendant seeking discovery on a selective enforcement claim must meet the same 'ordinarily equal protection standards' that *Armstrong* outlines for selective prosecution claims.")); *see also Casciani v. Nesbitt*, 659 F. Supp. 2d 427, 435 n.2 (W.D.N.Y. 2009) (finding "no practical difference between a claim of selective prosecution and a claim of selective enforcement" in this case), *aff'd*, 392 Fed. App'x 887 (2d Cir. 2010).

[5] "Racial composition" refers to the percentage of white, African American, and Hispanic individuals for a given category.

[6] According to the Defendants, eighteen "phony-stash house" cases with 95 defendants have been brought in the Southern District of New York since 2013.  Defs.' Mem. at 4, 5.  Defendants contend that all 95 defendants in these cases are people of color and that none are white.  *Id.* at 11. (identifying defendants as African American, Hispanic, and two defendants as Asian).

[7] Cited in Defendants' brief as *United States v. Terry*, 13 Mag. 220.

1.      **Statistical Evidence**

Regarding the first category of information, Defendants contend that these statistics—

showing that the Southern District of New York is "predominately white" and that "white people

also commit crimes" but that the individuals targeted in "phony-stash house" in this district are

all people of color—sufficiently shows "some evidence" of discriminatory effect and intent to

warrant discovery.  Defs.' Mem. at 11.  However, Defendants do not identify, directly or through

circumstantial evidence, individuals that participated in similar criminal conduct but were not

prosecuted as required under *Armstrong*.  *See Armstrong*, 517 U.S. at 469-70 (denying discovery

to defendants claiming they were racially selected for crack cocaine prosecutions where

defendants' evidence consisted of an affidavit listing 24 crack cocaine cases as all involving

African American defendants because the lists did not show that "similarly situated persons of

other races" were not prosecuted in federal court and "failed to identify individuals who were not

black and could have been prosecuted for the offenses for which respondents were charged, but

were not so prosecuted."); *United States v. Bass*, 536 U.S. 862, 863-64 (2002) (per curiam)

(finding defendants "failed to submit relevant evidence that similarly situated persons were

treated differently" where defendants relied on nationwide statistics demonstrating that African

Americans defendants are charged with "death-eligible offenses more than twice as often as

white" defendants because "raw statistics regarding overall charges say nothing about charges

brought against *similarly situated defendants*.") (emphasis original).[8]

_____

[8] Defendants' statement that "the government offers no explanation for why no white person has been targeted in a phony-stash house case," ignores the fact that it is the defendants' burden to provide "some evidence" sufficient to warrant discovery.  *See United States v. Alameh*, 341 F.3d 167, 174 (2d Cir. 2003).

Defendants' reliance on *Paxton* is misplaced.[9]  The *Paxton* court found the defendants'

statistical data—that in the seventeen "phony stash-house" cases filed in the Northern District of

Illinois since 2006 only seven of the 57 defendants are white and in cases filed since 2011 none

of the 26 defendants are white—provided "some evidence" of discriminatory effect and intent.

*United States v. Paxton*, No. 13 Cr. 103 (RWG), 2014 WL 1648746, at *1, *4 (N.D. Ill. April 17,

2014).  The *Paxton* court characterized defendants claim as one for selective enforcement and

explained that "identifying the class of individual is a much more burdensome endeavor" in a

selective enforcement claim rather than a selective prosecution claim.  *Id.* at *3-4 (citing *Chavez

v. Illinois State Police*, 251 F.3d 612 (7th Cir. 2001)).  Here, relying on *Paxton*, Defendants

contend that it may be impossible to identify situations where white individuals were not

prosecuted in "phony-stash house" cases because the DEA controls which individuals are

targeted and prosecuted.  Defs.' Mem. at 10 (citing *Paxton*, 2014 WL 1648746); Defs.' Reply

Mem. at 6-8.  However, "this factual distinction does not justify relieving Defendants altogether

of the burden to show similarly situated defendants of other races were treated differently."

*United States v. Whitfield*, 29 F. Supp. 3d 503, 514 (E.D. Pa. 2014) (explaining that, while "the

manner in which Defendants could be expected to demonstrate the discriminatory effect element

of their claim was different than that in *Armstrong*," defendants were not released from

providing "some evidence" of similarly situated persons); *United States v. Colon*, No. 14 Cr. 85

(JAM), 2014 WL 6390566, at *12 (D. Conn. Nov. 17, 2014) ("To the extent that defendants cite

---

[9] Defendants' reliance on *United States v. Davis*, 766 F.3d 722 (7th Cir. 2014) and *United States v. Williams*, 12 Cr. 887 (N.D. Ill. July 31, 2013) is also misplaced.  In *Davis*, the Seventh Circuit declined to review the district court's order granting discovery on jurisdictional grounds.  766 F.3d at 724.  The *Davis* court did not comment on the adequacy of the evidence presented to the district court.  The two-page order in *Williams* granting defendant's limited discovery on the basis of statistics regarding the race of defendants involved in seventeen "phony stash house rip off" cases does not address the merits of the defendants' claim and suffers from the same deficiencies as *Paxton*.

statistics from Connecticut and elsewhere of the number of minority defendants charged in [The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF")] stash-house schemes, these statistics—if reliable—do not cure defendants' failure to adduce evidence of similarly situated comparators."); *United States v. Cousins*, No. 12 Cr. 865-1 (AJSE), 2014 WL 5023485 at *4 (N.D. Ill. October 7, 2014) (rejecting the contention that the "entire white population of the Northern District of Illinois" was the appropriate "pool of similarly situated persons" and requiring that defendant "must show that the ATF chose not to conduct stash-house sting operations to ensnare members of another race who fell within the ATF's guidelines regarding whom those operations may target.").[10]

The Supreme Court in *Armstrong* explained the importance of "the required threshold—a credible showing of different treatment of similarly situated persons—[as] adequately balanc[ing] the Government's interest in vigorous prosecution and the defendant's interest in avoiding selective prosecution." *Armstrong*, 517 U.S. at 470. This Court cannot disregard the Supreme Court's directive. *See Colon*, 2014 WL 6390566, at *12 n.8 (noting that while "the statistical data is far more extensive" in the stash-house sting cases from the Northern District of Illinois in which discovery has been granted "because of the number of cases. . . I am unable to

---

[10] Despite the *Cousins* court's finding that defendants failed to satisfy the *Armstrong* standard, the court allowed for limited discovery of "ATF's policies and procedures in place at the time of defendant's arrest regarding the selection criteria for targets of phony stash-house robbery stings." 2014 WL5023485 at *4. The court explained it was "sympathetic . . . to the argument that without information as to what ATF is using as its selection criteria . . . defendant faces a difficult task of identifying similarly-situated non-minorities who were not targeted." *Id.* However, the *Cousins* court merely required the government to disclose material that had already been disclosed in another "phony stash-house" case. *Id.* The fact that the government had already disclosed this material alleviated concerns about imposing the costs of discovery on the government. *See Armstrong*, 517 U.S. at 468 (explaining that the standard to obtain discovery is "correspondingly rigorous" to the standard to establish a prima facie case of selective prosecution because discovery "imposes many of the costs present when the Government must respond to a prima facie case of selective prosecution . . . divert[ing] prosecutors' resources and [potential] disclos[ure] [of] the Government's prosecutorial strategy."). In granting discovery, the *Paxton* court also noted that the government had already produced "some of the same discovery materials sought in the instant case" and, as a result, "the costs of producing such discovery in the instant case are somewhat mitigated." 2014 WL 1648746 at *5. Here, there are no allegations that the government previously disclosed the requested information.

see how these decisions are consistent with *Armstrong* and *Bass* to the extent that defendants have not introduced comparator evidence or other evidence from which an inference about both discriminatory effect and intent can be drawn.").[11]

Even if Defendants could show discriminatory effect, Defendants cannot show discriminatory intent.  "Discriminatory purpose implies more than intent as awareness of consequences.  It implies that the decision maker selected or reaffirmed a particular course of action as least in part because of, not merely in spite of, its adverse effects upon an identifiable group."  *Wayte v. United States*, 470 U.S. 598, 610 (1985) (internal quotations and alterations omitted).  While discriminatory intent may "be demonstrated through circumstantial or statistical evidence," *Alameh*, 341 F.3d at 173, Defendants provide no evidence of discriminatory intent specific to *this case*.  *See United States v. Barnes*, 532 F. Supp. 2d 625, 637 (S.D.N.Y. 2008) ("while Defendant has attempted to make a substantial showing with regards to allegedly similarly situated individual who were not selected for capital prosecution, Defendant has made no showing with respect to discriminatory intent, let alone some showing that prosecutors acted with discriminatory purpose *in his case*.").  While the *Paxton* court found that defendants demonstrated that "no white defendants have been indicted for phony stash house cases since 2009 despite the diverse makeup of the Northern District of Illinois" and that this "'inexorable zero' may be evidence of discriminatory intent," *Paxton*, 2014 WL 1648746, at *5 (citing *Yick Wo*, 118 U.S. at 373-74), this finding has been questioned.  *See Cousins*, at *5 n.3 (declining "to

---

[11] In at least two "phony stash-house" cases in this district, the court has denied discovery regarding selective prosecution.  *See United States v. Delacruz*, No. 14 Cr. 815 (KBF), 2015 WL 2211943, at *4 (S.D.N.Y. May 12, 2015) (denying defendants' request for discovery where defendant produced no evidence of discriminatory intent or effect—"statistical or otherwise."); *Thompson*, 2013 WL 6246489, at *5 (denying discovery because "reported personal conclusions based on anecdotal evidence" that "phony stash-house" cases "unfairly target African-Americans and Latinos" and that "few if any Caucasians have been investigated and prosecuted by DEA for sham drug dealer robberies" "cannot constitute evidence of discriminatory effect or discriminatory intent.").  A motion to compel discovery regarding selective prosecution based on substantially similar evidence is also pending in this district.  *See United States v. Lamar*, 14 Cr. 726 (PGG) (Doc. 28).

follow *Paxton*" in finding "that defendants had produced 'some evidence' tending to show discriminatory intent by relying on the 'inexorable zero' theory" in light of *Chavez*'s rejection of the use of statistics as sole proof of a constitutional violation in the selective-enforcement context.").

 2.  **Comments by Confidential Informant**

Defendants' reliance on comments made by CI-2 regarding the defendant's and the defendant's co-conspirators' race *in a separate action*, *United States v. Rodriguez*, 13 Cr. 87 (CM), viewed alone or in conjunction with Defendants' statistics, is insufficient to provide "some evidence" of discriminatory effect or intent.  Even taking Defendants' contention that CI-2's comments "expressed a preference for black participants" in the robbery as true, Defs.' Reply at 1, 5, Defendants provide no evidence that the decision-makers in their case acted with discriminatory intent.  *See McCleskey v. Kemp*, 481 U.S. 279, 292 (1987) ("to prevail under the Equal Protection Clause, [defendant] must prove that the decisionmakers in *his* case acted with discriminatory purpose.") (emphasis original); *see also Barnes*, 532 F. Supp. 2d at 637.  Despite Defendants' contention that "[t]hese recordings overwhelming indicted that the DEA explicitly targeted people of color in executing this enforcement policy," Defs.' Mem. at 14, CI-2 was not a DEA agent or prosecutor, *see* Defs.' Mem. at 14, and it is not alleged that CI-2's comments were made at the direction of the DEA or the prosecutor.  Moreover, the confidential informants and/or cooperating witnesses in *Rodriguez* were not used in the instant case.  *Id.*  The government is also not aware of any relationship between the *Rodriguez* defendants or CI-2 and Defendants in the instant action.  *Id.* at 14 n.7.  As such, Defendants have not shown any discriminatory intent by the decision-maker in this case toward these Defendants.

Accordingly, Defendants' motion to compel discovery is DENIED.

## III. CONCLUSION

For the reasons set forth above, Defendants' motion is denied.  The Clerk of the Court is respectfully directed to terminate the motion (Docs. 93, 99).

It is SO ORDERED.


Dated:    June 19, 2015
          New York, New York

                                              Edgardo Ramos, U.S.D.J.